■ HELMSLEY-SPEAR, INC., Respondent, v MELVILLE CORP. et al., Appellants. [611 NYS2d 240] —In an action to recover damages for breach of an alleged oral brokerage agreement, the defendants appeal from an order of the Supreme Court, Westchester County (Coppola, J.), entered July 30, 1992, which denied their motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.

The plaintiff Helmsley-Spear, Inc., is a licensed real estate brokerage company. In the fall of 1986, when the defendant Melville Realty Company (hereinafter Melville) was considering leasing additional office space in Westchester County, representatives of the plaintiff submitted a list of potential lease sites to Melville's president Daniel Katz. Katz, however, informed the plaintiff in writing that Melville would only consider utilizing its services with respect to any buildings which it managed or exclusively represented. Moreover, by letter dated November 25, 1986, Katz advised the plaintiff that Melville was "not prepared to engage your organization as a broker or consultant at this time".

Despite Melville's refusal to engage the plaintiff's services, the plaintiff claims that in February 1987 one of its brokers made a "cursory showing" of the Dictaphone Building in Rye, New York, to Melville's real estate manager Leonard DiPippo. It is undisputed that the plaintiff never managed the Dictaphone Building or exclusively represented its owner. Two months later, in April 1987, the plaintiff's vice-president wrote to DiPippo to advise him that the Dictaphone Building would be available in late 1988. The plaintiff alleges that as a result of its efforts to procure office space in the Dictaphone Building for Melville's use, arrangements were made for Katz to view the premises on June 16, 1987, and to meet with representatives of Cushman and Wakefield, which had been appointed exclusive agent for the property. The plaintiff's vice-president claims that when he contacted Melville's real estate manager DiPippo on June 15, 1987, in regard to attending this meeting, DiPippo asked him not to attend, and assured him, when he questioned Melville's motives, that the plaintiff would be "recognized and protected as the broker on any lease made by Melville Corporation with regard to the Dictaphone * * * Property".

Approximately three weeks later, on July 9, 1987, the plaintiff's vice-president wrote to Katz to advise him that the Related Properties Corporation had made an offer to purchase the Dictaphone Building and lease the space to Melville. In his July 9 letter, the plaintiff's vice-president also asked Katz to acknowledge that the plaintiff had been "instrumental in bringing the Dictaphone property" to Melville's attention, claiming that DiPippo had assured him that in the event Melville decided to "proceed", DiPippo would " 'work' a deal with me regarding commission". Katz immediately responded by writing to inform the plaintiff of Melville's position that "it had no relationship or obligation" to pay the plaintiff a

commission. Despite Katz's letter, the plaintiff continued to assist Related Properties in its efforts to purchase the Dictaphone Building, and Related Properties subsequently agreed to pay the plaintiff a $200,000 commission in the event that such a purchase took place. However, Related's offer to purchase the premises was apparently rejected.

Thereafter, in September 1987 Urbco, Inc. (hereinafter Urbco) entered into a contract to purchase the Dictaphone Building, and approximately six months later, Urbco entered into an agreement to lease the premises to Melville. Following execution of the lease, the plaintiff commenced this action seeking damages in the sum of $980,000 for the breach of an alleged exclusive brokerage agreement, by which Melville agreed to recognize only the plaintiff as its broker with regard to the leasing of the Dictaphone Building, thus entitling the plaintiff "to receive compensation * * * from the fee owner of subject premises upon the execution of a mutually agreeable leasehold agreement". The defendants subsequently moved for summary judgment, contending that the documentary evidence in the form of the parties' correspondence demonstrated, as a matter of law, there was never any exclusive brokerage agreement with the plaintiff. The Supreme Court denied the defendants' motion for summary judgment, and we now reverse.

"It has long been recognized that a broker, save when he enjoys the benefit of a special agreement to the contrary, does not automatically and without more make out a case for commissions simply because he initially called the property to the attention of the ultimate purchaser" (Greene v Hellman, 51 NY2d 197, 205; see also, Douglas, Payton & Co. v We're Assocs., 197 AD2d 559; Brown & Son Realty v Greenberg, 195 AD2d 583). Here, the record demonstrates that the plaintiff's role in Melville's ultimate lease of the Dictaphone Building consisted of little more than introducing the property to Melville's attention during the winter of 1987, at a time when it is undisputed that no exclusive brokerage agreement existed. The plaintiff's bare and unsubstantiated claim that an exclusive agreement to pay commissions arose on June 15, 1987, when Melville's real estate manager DiPippo allegedly promised to "recognize and protect" the plaintiff's interest in any future lease for the Dictaphone Building, is insufficient to demonstrate the existence of a triable issue of fact with respect to the claimed oral agreement to pay a commission. Significantly, the documentary evidence, which includes the plaintiff's own correspondence, reveals that all of the plain-

tiff's alleged efforts were geared toward arranging the sale of the Dictaphone Building to Related Properties, which had expressly agreed to pay the plaintiff a commission for its services. In contrast, the record is devoid of evidence that Melville ever promised to pay the plaintiff a commission for any services rendered prior to June 15, 1987, when the plaintiff was informed that another broker had been appointed exclusive agent for the property, and only three weeks thereafter the plaintiff's vice-president still acknowledged that he was waiting for DiPippo to " 'work a deal' " out with him regarding a commission. Immediately upon receipt of this letter, Melville's president once again advised the plaintiff of its position that it had no relationship with the plaintiff or any obligation to pay a commission.

Under these circumstances, any efforts by the plaintiff to procure office space in the Dictaphone Building for Melville could not have been made in reasonable reliance upon Melville's alleged promise to "recognize and protect" the plaintiff. To the contrary, the only reasonable inference to be drawn from the plaintiff's efforts to arrange for Related Properties to purchase the Dictaphone Building even after July 1987 when Melville reiterated its position that it had not engaged the plaintiff's brokerage services, is that the plaintiff expected to earn a commission from Related Properties for its efforts. We further note that the plaintiff does not even allege that Melville bound itself to pay any specific sum as a commission, or that any other terms of the alleged oral brokerage agreement, including duration, were ever agreed upon by the parties. Accordingly, we find that the plaintiff's allegation that Melville promised to "recognize and protect" its interest as broker is insufficient to create a triable issue of fact as to the existence of a binding oral agreement by which the defendants became obligated to pay the plaintiff a commission in the sum of $980,000.

We further note that the plaintiff's extensive reliance upon *Gordon Co. v Tucker Anthony & R.L. Day* (162 AD2d 319) is misplaced. Although the *Gordon* Court concluded that an alleged oral agreement to "cover" and "protect" the plaintiff broker was sufficient to state a cause of action for breach of an exclusive brokerage agreement, in that case the plaintiff submitted proof that it had undertaken extensive efforts to introduce the defendant to suitable leasing opportunities in reliance upon the alleged oral agreement. In contrast, at bar the plaintiff has submitted no proof that it acted in reliance

upon a promise that Melville would pay a commission for its efforts. Lawrence, J. P., Joy and Krausman, JJ., concur.

Friedmann, J., dissents and votes to affirm the order appealed from, with the following memorandum: The evidence in the record establishes that in late 1986 and early 1987 the plaintiff's agents endeavored to find suitable office space in Westchester County for the defendants, and that they introduced the defendants' real estate manager, Leonard DiPippo, to the Dictaphone property on February 9, 1987. Moreover, the plaintiff's agents proposed that the defendants' executive office space could be expanded by construction on the building's adjoining parcel of vacant land. In addition, the plaintiff's agents have averred that DiPippo assured them on the eve of the defendants' formal inspection of the Dictaphone site that the plaintiff would be "recognized and protected as to any lease agreement related to the Dictaphone property"—an assurance given by DiPippo in the context of his request that the plaintiff's agents not attend the formal viewing. DiPippo has never denied making this promise. When the defendants *did* rent the property introduced to them by the plaintiff, and embarked upon precisely the development of the adjoining lot that the plaintiff had proposed, they did so pursuant to a lease containing a provision that its new landlord would "indemnify and hold [the defendants] harmless against and from any liabilities arising from any claim for brokerage commissions including, without limitation, the cost of attorney's fees in connection therewith".

Under these circumstances, I agree with the Supreme Court that the plaintiff raised triable issues of fact as to the existence of an oral agreement that it would be recognized as the exclusive real estate broker in connection with the defendants' leasing of the Dictaphone property *(see, Gordon Co. v Tucker Anthony & R.L. Day,* 162 AD2d 319).